**Romona BLACKNALL, et al.,
Petitioners,**

**v.**

**DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION, et al.,
Respondents.**

**Lustine Realty Company,
Inc., Intervenor.**

**No. 85–1358.**

District of Columbia Court of Appeals.

Argued June 1, 1988.
Decided July 21, 1988.

---

Harnam S. Arneja, Washington, D.C., for petitioners.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondents.

Brian D. Riger, Washington, D.C., for intervenor.

Rozanne Look, Washington, D.C., filed a brief on behalf of amicus curiae, Committee to Save Rental Housing.

Before NEWMAN, BELSON and SCHWELB, Associate Judges.

NEWMAN, Associate Judge:

On this petition for review, we are called upon to again examine the small landlord exemption of the Rental Housing Act. We conclude the Rental Housing Commission correctly determined the landlord in this case to fall within the exemption. We affirm.

The Blacknalls and Gloria McQueen are apartment tenants at 1838–16th Street, N.W. They challenge rent increases taken by their landlord. The landlord claims exemption from rent control. She asserts that she falls within the small landlord exemption of Section 206(a)(3) of the Rental Housing Act of 1980, D.C.Code § 45–1516(a)(3) (1981). This section exempts from rent control "any rental unit in any housing accommodation of 4 or fewer units" if certain other criteria—which are not relevant in this case—are met. A "rental unit" is defined in the Act as "any part of a housing accommodation—which is rented or offered for rent for residential occupancy and includes any apartment, efficiency apartment, room, single family house—suite of rooms, or duplex." D.C. Code § 45–1503(27) (1981). A housing accommodation is a building containing one or more rental units. D.C.Code § 45–1503(8) (1981).

The tenants' petition was heard by a Hearing Examiner. The Examiner found that the housing accommodation contained four rental units and one office. The record showed the office had been in continuous use as such since 1978. On April 30, 1984, Sara Lustine conveyed the property to Marlyne Klawans, her daughter, by inter vivos gift. In May 1984, Klawans obtained a certificate of occupancy, authorizing use of the building as a four-unit apartment house. In her claim for exemption filed on May 30, 1984, Klawans stated that there were four habitable units and one commercial office (owner occupied), and this had been so since 1978. The tenants appealed to the District of Columbia Rental Housing Commission (Commission).

The Commission reversed, holding that where a landlord owns more than four units and uses one or more of them other than for residential rental purposes, the property is not exempt. In essence, the Commission said that "unit" as used in § 45–1516(a)(3) ("any rental unit in any housing accommodation of 4 or fewer units") has a different meaning from "rental units" in that section of the statute. The landlord petitioned for reconsideration; the Commission reversed itself.[1] It held the property was exempt from rent control, and that the small landlord exemption applies where no more than four units are used as rental units as defined by the Act. The Commission further held that for the purposes of § 45–1516(a)(3)—the exemption provision—"rental unit" and "unit" have the same meaning. The Commission noted not only that its regulations adopted in 1983 to implement the Act referred to "rental units" as the appropriate measure, but also that its prior decisions were consistent with its decision upon reconsideration. The Commission noted further the 1985 Act had added the term "rental" to make the exemption clause now read "4 or fewer rental units." In doing so, the legislative history characterized the change as a clarification of, not a reversal of, prior law. The Commission stated that all rental units will be counted whether occupied, vacant, or temporarily withheld from the rental market. The burden of proof of exemption is on the landlord. Turning to the record before it, the Commission found, based both on the 1985 Certificate of Occupancy obtained by Klawans reflecting use as a four rental unit building, as well as credi-

ble testimony that the fifth unit had been used as an office since about 1978, that there had been a "permanent change of use" of one unit. The tenants petitioned this court for review.

■ Most of the issues raised by the tenants do not merit discussion.[2] We write to deal with two issues raised by the tenants: (1) that "unit" has a different meaning from "rental unit" and (2) that the record does not sustain the finding of the Commission that a unit has been permanently removed from the market. We thought we had answered the first of these questions in *Revithes v. District of Columbia Rental Housing Commission,* 536 A.2d 1007 (D.C.1987). There, we stated: "Revithes primarily claims on appeal that RHC ruled that mere ownership of more than four units, regardless of use, subjects a small landlord to rent control limitations. Revithes, however, simplifies and partially mischaracterizes the nature of the decision on review." *Id.* at 1013. We then proceeded to examine each basis on which Revithes had claimed exemption which was rejected by the Commission—commercial units, vacant units, and units occupied by relatives. We affirmed the Commission's ruling that Revithes had failed to *factually* demonstrate entitlement to exemption on any of those bases. In the course of our opinion in *Revithes,* we said that although we were dealing with the 1977 Act there, our decision would be equally applicable to the 1980 and 1985 Acts since the only change was the amendment in the 1985 Act; (The addition of "rental" to modify "unit" "was for clarifying purposes only....") *Id.* at 1013 n. 18. The Commission had already

---

**1.** The composition of the Commission had changed during the interval. A new group of commissioners had been appointed and sworn in under the Rental Housing Act of 1985, D.C. Code § 45–2501 *et seq.* (1986 replacement).

**2.** For example, the fact that the composition of the Commission changed between its original decision and its new decision on reconsideration does not somehow vitiate its final decision. *See Albertson v. Federal Communications Commission,* 87 U.S. App.D.C. 39, 41, 182 F.2d 397, 399 (1950); *Dayley v. United States,* 169 Ct.Cl. 305, 308 (1965). There is no merit to the claimed procedural irregularities by the Hearing Examiner, nor the challenge to the decisions

by Commissioner Cresswell or the Hearing Examiner. *See Vann v. Board of Funeral Directors,* 441 A.2d 246, 249–50 (D.C.1982); *see also National Labor Relations Board v. Donnelly Garment Co.,* 330 U.S. 219, 236–37, 67 S.Ct. 756, 765–66, 91 L.Ed. 854 (1947). There is no evidence that the transfer from Lustine to Klawans was invalid. *See Gibson v. Johnson,* 492 A.2d 574 (D.C.1985). Indeed petitioners did not appear to challenge the Commission's ruling on this point. In sum, all of petitioners' other contentions, including his certificate of occupancy and zoning violations claims, are devoid of any merit.

ruled the same in this case prior to our decision in *Revithes*. We reiterate what we thought we had made clear in *Revithes*—the Commission did not err by ruling that "rental unit" and "unit" as used in § 45–1516(a)(3) have the same meaning.

 Likewise, in *Revithes* we said: "In proper circumstances, landlords are permitted to permanently remove rental units from the rental market. Thus, although vacant units are to be counted, permanently withdrawn units are not to be counted." *Id.* at 1017 n. 24 (citations omitted). We reiterate here what we said there; when a rental unit has been permanently removed from the market as a rental unit, it does not count in the calculation of four units.

On this record, the Commission was more than adequately justified in finding such a permanent removal.

*Affirmed.*

SCHWELB, Associate Judge, concurring:

It is troubling, at least to me, that coverage under the rent control laws can be avoided, and the tenants' rent can be almost tripled,[1] by conveying the premises from mother to daughter for the princely sum of $10.00.[2] In situations which appear to me to be analogous in principle, transfers between family members are treated as suspect and are subject to special scrutiny by the courts, especially where no consideration has been paid. *See C.I.R. v. Tower*, 327 U.S. 280, 291, 66 S.Ct. 532, 537, 90 L.Ed. 670 (1946); *Sence v. United States*, 184 Ct.Cl. 67, 394 F.2d 842, 852 (1968) (avoidance of taxes); *Shauer v. Alterton*, 151 U.S. 607, 625–26, 14 S.Ct. 442, 447–48, 38 L.Ed. 286 (1894); *Neubauer v. Cloutier*, 265 Minn. 539, 122 N.W.2d 623, 628, n. 4 (1963) (transfers to blood relatives to the prejudice of creditors). Indeed, in *Remin v. Rental Housing Commission,*

471 A.2d 275 (D.C.1984), this court held that a husband was not entitled to exemption where he owned three condominium units and his wife owned two, observing that

> it is both rational and reasonable for the Commission to assert that the law prevents persons from claiming the four unit rent control exemption when other units are owned by a wife.

471 A.2d at 279.

The landlord has the burden of proving that he is exempt from rent control, and the statutory exemptions are to be narrowly construed. *Revithes v. Rental Housing Commission*, 536 A.2d 1007, 1017 (D.C. 1987); *Remin, supra*, 471 A.2d at 279. I believe that it is time to borrow from the Constitution, *Lane v. Wilson*, 307 U.S. 268, 275, 59 S.Ct. 872, 876, 83 L.Ed. 1281 (1939) and from the civil rights statutes, *United States v. Real Estate Dev. Corp.*, 347 F.Supp. 776, 782 (N.D.Miss.1972), and apply to the rent control laws, the principle that the law forecloses sophisticated as well as simple-minded modes of nullification or evasion. If gratuitous transfers to sons and daughters, not to mention sisters and cousins and aunts,[3] are accepted at face value, there might be a bonanza for landlords with large families, to the detriment of those whom the legislation was designed to protect.

In *Gibson v. Johnson*, 492 A.2d 574 (D.C. 1985), however, this court sustained a father's claim of exemption after he had transferred the subject premises to his son at least in part to evade rent control, even though the father was obligated on a promissory note on the property and continued to manage the building. Since *Gibson* is binding authority, since the tenants have not pursued the issue, and since the tenants' other contentions—particularly the "once a rental unit, always a rental unit"

---

1. Gloria McQueen's rent was increased from $154.00 per month to $455.00. The Blacknalls' rent went up from $160.00 to $390.00.

2. This is the amount recited in the deed. The daughter testified before the hearing examiner

that she knew nothing about the $10.00 and that the transfer was a gift.

3. Gilbert and Sullivan, *H.M.S. Pinafore.*

theory—are unpersuasive, I join Judge Newman's opinion for the court.