Lawrence NWANKWO, et al.,
Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent,

and

Wolsey Semple, Intervenor.

No. 86–1249.

District of Columbia Court of Appeals.

Argued Oct. 22, 1987.

Decided June 10, 1988.

---

Peter Hekman–Lielbriedis, Washington, D.C., for petitioners.

Susan S. McDonald, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Karen S. Dworkin, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Paul D. Crumrine, Washington, D.C., was on the brief for intervenor.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

NEWMAN, Associate Judge:

■ Petitioners (tenants) seek review of a decision and order of the Rental Housing Commission (Commission) refusing to invalidate a rent increase taken by their landlord under a provision of the Rental Housing Act of 1980, D.C.Code §§ 45–1501–1597 (1981).[1] The tenants contended before the Commission and contend here that the rent increases were invalid because the landlord had not given them the requisite 10–day notification of his self-certification (pursuant to D.C.Code § 45–1519(b)(1) (1981)) that all substantial housing code violations had been abated. The tenants argued that this absence of notice (which was conceded by the landlord) deprived them of their opportunity to contest the issue of abatement of housing code violations. The tenants further urged before the Commission and before us that the Commission was bound by a prior decision which, they contend, compelled the Commission to rule in their favor. The Commission, however, ruled that a landlord's failure to comply with the 10–day notice provision of § 45–1519(b)(1) does not invalidate a subsequent rental increase absent a showing by the tenants that the rental accommodation was not in substantial compliance with the Housing Code at the time of the increase. The Commission distinguished and otherwise declined to follow its prior decision by which the tenants contended it was bound. We affirm the Commission's decision and Order. We further dismiss the petition of Maria Gomez since she is not a "party."[2]

D.C.Code § 45–1519(b) provides:

---

1. The Rental Housing Act of 1980 took effect on May 1, 1981, D.C.Law 3–131, 28 D.C.Reg. 326, D.C.Code §§ 45–1501–1597 (1981), and expired on April 30, 1985. Because the tenants' petition was filed on September 28, 1984 and the rent increases which they challenge became effective on October 1, 1983, this case is governed by the 1980 Act.

2. The parties have not raised this standing issue. We do so *sua sponte* given our authority to review only those petitions filed by persons "suf-

A housing accommodation and each of the rental units therein shall be deemed to be in substantial compliance with the housing regulations:

(1) If, for purposes of the adjustments made in the rent ceiling in §§ 45–1517 and 45–1518, all substantial violations cited at the time of the last inspection of the housing accommodation by the Department of Housing and Community Development prior to the effective date of the increase were abated within a 45–day period following the issuance of the citation(s) or that time granted by the Department of Housing and Community Development, and the Department of Housing and Community Development has certified the abatement, *or the owner or the tenant has certified the abatement and has presented evidence to substantiate such certification: Provided, that no certification of abatement shall establish compliance with the housing regulation unless the tenants have been given 10–day notice and an opportunity to contest such certification;* and [Emphasis added.]

(2) If, for purposes of the filing of petitions for adjustments in the rent ceiling as prescribed in § 45–1527, the housing accommodation and each of the rental units therein have been inspected at the request of each landlord by the Department of Housing and Community Development within the 30 days immediately preceding the filing of a petition for adjustment.

■ It is the consequence of the landlord's failure to give the 10–day notification of self-certification of abatement which is the issue presented in this case. As previously stated, the Commission held that a violation of the notice provision does not invalidate a subsequent rent increase absent a showing by the tenants that the property is not in substantial compliance with the Housing Code.

There were two proceedings before the Commission which are relevant to our consideration. We will deal with them chronologically. On January 25, 1984, Ellemeta Holmes/James, a tenant who rented one of the apartments at 3534 10th Street, N.W., filed a petition challenging a rent increase; she contended that the landlord had violated the 10–day notice requirement on self-certification. She urged that she was entitled to a rollback of rent and treble damages. She also presented evidence that the smoke detector in her apartment unit was defective. After considering both the landlord's and tenant's appeals of the hearing examiner's ruling, the Commission ruled that the defective smoke detector in the Holmes/James unit caused that unit not to be in substantial compliance at the time of the rent increase. The Commission ordered a rent rollback and award of treble damages. The Commission thereafter stated, either as an alternative ground of decision or by way of dictum, that a violation of the notice provision entitled the tenant to rent relief without regard to the existence of substantial Housing Code violations.

While the Holmes/James case was pending before the Commission, the tenants in this case (except for Gomez), who also rented apartments at 3534 10th Street, N.W., filed a petition seeking rollback of rents and treble damages based on the conceded lack of notification. After considering the tenants' appeal from the hearing examiner's ruling which was adverse to them, the Commission ruled that the tenants were not entitled to rent relief because of non-notification. The Commission further ruled that since the tenants had presented no evidence that their unit, or any common

fering a legal wrong, or adversely affected or aggrieved, by an order or decision of ... an agency...." D.C.Code § 1–1510(a) (1981); *see Lee v. District of Columbia Bd. of Appeals and Review,* 423 A.2d 210, 215 (D.C.1980). Maria Gomez has alleged that she is a tenant of the subject property. However, the record indicates that she was neither a named tenant in the initial petition filed with the Rental Accommo-

dations Office nor did she subsequently intervene in the administrative proceedings. Since she was not a party in the administrative proceedings, she cannot petition for review thereof. *See Lee, supra,* 423 A.2d at 215–17; *Basiliko v. District of Columbia,* 283 A.2d 816, 818 (D.C. 1971). Nor has she sought permission to intervene in this court. Accordingly, her petition for review is dismissed.

area, was not in substantial compliance with the Housing Code at the time of the rent increase, they were not entitled to rent relief. It was on this basis, among others, that the Commission declined to follow its ruling in the Holmes/James case.[3] Specifically, the Commission agreed with the tenants that a landlord who elects to self-certify an abatement must serve notice of his certification upon his tenants. However, the Commission characterized the notice requirements as a procedural mechanism establishing when the Rental Administrator can make a finding of substantial compliance or substantial noncompliance. The Commission stated that if a landlord complies with the notice requirements and if the tenants fail to challenge the certification within 10 days of such notification, the tenants cannot later challenge the rent increases. On the other hand, the tenants will maintain their right to challenge the rent increases if the landlord fails to serve them notice of his certification. Therefore, the Commission concluded that notwithstanding notice or lack thereof, in order to invalidate rent increases, it is incumbent upon the tenants to prove, pursuant to the Administrative Procedure Act,[4] that the housing accommodation was in substantial noncompliance when the rent increases took effect.

The tenants contend that the Commission's decision, in effect, permits a landlord, who has previously been cited for housing code violations and who has failed to provide the tenants with notice, to establish compliance through certification. Stated otherwise, they argue that this constitutes a finding of compliance for a noncomplying landlord. Consequently, they contend that the Commission's interpretation of § 45–1519(b)(1) is contrary to its plain meaning, the legislative intent, a related regulation (14 DCMR § 3504.6 (1983)), and the Commission's prior interpretation of this statutory provision.

Deference is to be given "to an agency's interpretation of a statute [and regulations] it administers unless that interpretation is unreasonable in light of the prevailing law. We reverse only where the agency's interpretation is contrary to the plain meaning...." *Boyd v. District of Columbia Department of Human Services,* 524 A.2d 744, 747 (D.C.1987) (Per Curiam) (quoting *MCM Parking Co. v. District of Columbia Department of Employment Services,* 510 A.2d 1041, 1043–44 (D.C.1986)); *see Quality Management, Inc. v. District of Columbia Rental Housing Commission,* 505 A.2d 73, 75 (D.C.1986); *Remin v. District of Columbia Rental Housing Commission,* 471 A.2d 275, 279 (D.C.1984); *DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 359 (D.C.1980). Generally, the language contained in the statute expresses the legislative intent. *Barbour v. District of Columbia Department of Employment Services,* 499 A.2d 122, 125 (D.C.1985) (citing *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc)). Therefore, consideration must be given to the entire legislative scheme. *See Floyd E. Davis Mortgage Co. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) (per curiam). We review this case under these principles.

To ascertain the legislative intent, the Commission began its analysis by examining the Rental Housing Act itself. The Commission reviewed D.C.Code § 45–1519(a)(1) (1981), which articulates the requirements a landlord must complete before rent increases may be implemented. These requirements include: (1) property must be in substantial compliance with the Housing Code; (2) proper registration of property, landlord, and manager; and (3) proper notice (which is separate and distinct from the notice requirements at issue herein). The Commission further noted that the failure to complete these requirements may subject the landlord to penal-

---

**3.** The Commission noted that to the extent that its decision in the Holmes/James case suggested that a violation of the 10–day notice provision entitled a tenant to rent relief without regard to the existence of substantial Housing Code viola-

tions, it deemed its Holmes/James decision to be erroneously decided.

**4.** *See* D.C.Code § 1–1509 (1981) & (1987).

ties. *See* D.C.Code §§ 45–1519(a)(1) & –1591 (1981). In addition, the Commission considered D.C.Code § 45–1519(a)(2) (1981), which authorizes a rent rollback when the Rental Administrator finds excessive and prolonged violations affecting the health, safety, and security of the tenants. After reviewing these statutory provisions, the Commission opined that the legislature intended to create a system whereby the emphasis was on substantial compliance and in order to carry out this objective: (1) the landlord has the burden of ensuring that the housing accommodation is in substantial compliance; and (2) the tenant has the burden of demonstrating that the housing accommodation is in substantial noncompliance to prohibit rent increases. Thus, the Commission concluded that § 45–1519(b)(1) did not entitle a tenant to rent relief because of non-notification.

We cannot say that the Commission's interpretation is unreasonable. D.C.Code § 45–1519(b)(1) (1981) requires the abatement of all substantial violations prior to implementing any rent increases. A substantial violation is defined as "the presence of any housing condition, the existence of which violates the housing regulations, or any other statute or regulation relative to the condition of residential premises and may endanger or materially impair the health and safety of any tenant or person occupying the property." D.C. Code § 45–1503(29) (1981). Furthermore, as stated previously, a rent rollback is also contingent upon the existence of violations affecting the health, safety, and security of the tenants; and even then, it only remains in effect until the violations have been abated. D.C.Code § 45–1519(a)(2) (1981). Failure to comply with the notice requirements does not prove or disprove that the health, safety, or security of the tenants has been impaired or jeopardized.

■ We disagree with the tenants that the Commission's decision is inconsistent with 14 DCMR § 3504.6 (1983). This regu-

lation states that "[n]o finding shall be made that Housing Code violations have been certified as abated unless the tenants had an opportunity to contest the certification, in accordance with the provisions of D.C.Code, Section 45–1519(b)(1)." 14 DCMR § 3504.6 (1983). The regulation is compatible with § 45–1519(b)(1) because both preclude a finding of compliance until the tenants have been afforded an opportunity to contest a certification.

Finally, we find no error in the Commission's rejection of the tenants' contention that doctrines of preclusion bound it by its Holmes/James decision to hold that a violation of the notice provision creates a per se entitlement to rent relief without regard to substantial compliance with the Housing Code. The issue is not one of preclusion. The Commission has the authority to depart from prior decisions, so long as it explains the reasons for such departure. *See Oil, Chemical Atomic Workers International Union, AFL–CIO v. NLRB*, 256 U.S.App.D.C. 370, 374–75 n. 34, 806 F.2d 269, 274 n. 34 (1986); *see also Telecommunications Research and Action Center v. FCC*, 255 U.S.App.D.C. 156, 159, 800 F.2d 1181, 1184 (1986). The Commission did set forth its reasons for construing the statute as it does; we find no error in that construction. Indeed, a contrary construction would be strained, at best.[5] We find the Commission's interpretation of the notice requirement reasonable and consistent with the Rental Housing Act.

*Affirmed.*

---

5. At oral argument, counsel for the tenants for the first time argued that there was in fact evidence in the record before the hearing examiner of substantial noncompliance with the Housing Code. The tenants never raised this issue before the Commission, electing rather to stand or fall on their notice claim. We decline to hear this issue for the first time in this court. *See Arthur v. District of Columbia Nurses' Examining Board,* 459 A.2d 141, 145 n. 7 (D.C.1983).